Citation Nr: 1522734 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-22 123 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for bilateral hearing loss. 

2. Whether new and material evidence has been received to reopen a claim of service connection for tinnitus. 

3. Entitlement to service connection for eardrum damage.

4. Entitlement to service connection for bilateral hearing loss.

5. Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

B. Muetzel, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1967 to June 1969. 

The matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In September 2014, the Veteran testified at a video hearing over which the undersigned Veterans Law Judge presided. A transcript of that hearing has been associated with the claims file.

The Veteran submitted additional evidence, in the form of private treatment records, in September 2014, after the issuance of the most recent Supplemental SOC. However, at that time, he also waived RO consideration of the evidence in a signed statement. 38 C.F.R. §§ 20.800, 20.1304 (2014).

The Board also notes that, in addition to the paper claims file, there is a paperless, electronic (Virtual VA) claims file associated with the Veteran's claim. A review of the documents in such file reveals that certain documents, including the September 2014 hearing transcript, are relevant to the issues on appeal. As such, these virtual files have been considered in the adjudication of the Veteran's claims.

The issues of service connection for bilateral hearing loss and tinnitus are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In a final decision issued in May 2008, the RO denied the Veteran's claim of entitlement to service connection for bilateral hearing loss. 

2. Evidence received since the May 2008 decision is new and raises a reasonable possibility of substantiating the claim of entitlement to service connection for bilateral hearing loss.

3. In a final decision issued in May 2008, the RO denied the Veteran's claim of entitlement to service connection for tinnitus. 

4. Evidence received since the May 2008 decision is new and raises a reasonable possibility of substantiating the claim of entitlement to service connection for tinnitus.

5. The preponderance of the evidence is against a finding that the Veteran currently has eardrum damage related to his period of active service.


CONCLUSIONS OF LAW

1. The May 2008 rating decision that denied the Veteran's claim of entitlement to service connection for bilateral hearing loss is final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2014). 

2. New and material evidence has been received to reopen the claim of entitlement to service connection for bilateral hearing loss. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2014).

3. The May 2008 rating decision that denied the Veteran's claim of entitlement to service connection for tinnitus is final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2014). 

4. New and material evidence has been received to reopen the claim of entitlement to service connection for tinnitus. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2014).

5. The criteria for service connection for eardrums damage have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implantation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify the claimant of any evidence that is necessary to substantiate the claim, as well as the evidence VA will attempt to obtain and which evidence he is responsible for providing. 38 C.F.R. § 3.159(b) (2014). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; see also Pelegrini v. Prinicipi, 18 Vet. App. 112 (2004). However, the VCAA notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. See Pelegrini, 18 Vet. App. at 121. 

In this appeal, in March 2011 and June 2011 VCAA letters, the RO provided notice to the Veteran regarding what information and evidence was needed to substantiate his claims. The RO provided notice to the Veteran regarding the need to submit new and material evidence to reopen the Veteran's previously denied claim, and advised the Veteran of the bases for the prior denial. See Kent v. Nicholson, 20 Vet. App. 1 (2006). These letters also informed the Veteran of what information and evidence must be submitted by the appellant and what information and evidence would be obtained by VA. The letters also provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations. The November 2011 rating decision reflects the initial adjudication of the claim after issuance of this letter. Hence, the March 2011 and June 2011 letters met the VCAA's timing of notice requirement.

Further, the Veteran was medically evaluated in conjunction with regard to his claim of service connection for eardrum damage in September 2011 and October 2011. The Board notes that the VA examiners correctly recited the Veteran's pertinent medical history and examined the Veteran's disability. The examiners reviewed the claims file, including the Veteran's VA treatment records and service treatment records. It is thus clear that the examiners had the information required to properly consider the Board's inquiries. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The resulting medical opinions are considered adequate for rating purposes as they are based on consideration of the Veteran's medical history and describe the relevant disability in sufficient detail to enable the Board to reach a fully informed decision. See Floyd v. Brown, 9 Vet. App. 88, 93 (1996); Ardison v. Brown, 6 Vet. App. 405, 407-08 (1994); Green v. Derwinski, 1 Vet. App. 121, 124 (1991). 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matter herein decided. Pertinent evidence associated with the claims file consists of service treatment records, VA and private treatment records, reports of VA examinations, the September 2014 hearing transcript, and the Veteran's statements. 

The Veteran has been afforded a hearing before a Veterans Law Judge (VLJ) in which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2014) requires that the VLJ who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, the undersigned identified the issues on appeal, indicated the basis for the RO's denial, and indicated the evidence necessary to substantiate the claims. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. Moreover, the record fails to show harmful error under Bryant as the development (medical examination and nexus opinion) necessary to substantiate the claim was conducted. See Bryant v. Shinseki, 23 Vet. App. 488, 498-99 (2010).

In summary, the duties imposed by the VCAA have been considered and satisfied. Through various notices of the RO, the Veteran has been notified and made aware of the evidence needed to substantiate this claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 539, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

I. New and material evidence

A decision of the RO becomes final and is not subject to revision on the same factual basis unless a notice of disagreement is filed within one year of the notice of decision. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.302, 20.1103 (2014). If a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108 (West 2002); see Manio v. Derwinski, 1 Vet. App. 140, 145 (1991). 

New evidence means existing evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2014). 

VA must review all of the evidence submitted since the last final rating decision in order to determine whether the claim may be reopened. See Hickson v. West, 12 Vet. App. 247, 251 (1999). For purposes of determining whether new and material evidence has been received to reopen a finally adjudicated claim, the recently submitted evidence will be presumed credible. See Kutscherousky v. West, 12 Vet. App. 369, 371 (1999) (per curium) (holding that the "presumption of credibility" doctrine continues to be precedent). 

The Court of Appeals for Veterans Claims has held that the determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after the Board has found that evidence is new and material. Shade v. Shinseki, 24 Vet. App. 110 (2010). The Court further held that new evidence would raise a reasonable possibility of substantiating the claim if, when considered with the old evidence, it would at least trigger the Secretary's duty to assist by providing a medical opinion. Id.

The Veteran originally filed his claims of service connection for bilateral hearing loss and tinnitus in November 2007. In a May 2008 rating decision, the RO denied the claims. At that time, the RO considered the Veteran's service treatment records and denied the claim for service connection for hearing loss on the basis that the Veteran had not provided evidence that his hearing loss was incurred in service, is related to service, or began within one year after discharge. The RO denied the claim of tinnitus because the evidence did not show that the tinnitus was incurred or aggravated in service, and the current diagnosis was not shown to be related to noise exposure in service or otherwise related to past service. 

Then, in April 2011, the Veteran filed a claim to reopen the previously denied claims of entitlement to service connection for bilateral hearing loss and tinnitus. In a November 2011 rating decision, the RO continued the denial on the basis that the Veteran had not submitted new and material evidence. Specifically, the RO found that there was no evidence that linked the Veteran's hearing loss or tinnitus to his period of service; in addition, the RO found that the Veteran had not provided evidence to show that his hearing loss had begun within one year of discharge. Regardless of whether the AOJ reopened the Veteran's claims, the Board must decide the threshold issue of whether the evidence is new and material before addressing the merits of a claim. See Jackson v. Principi, 265 F. 3d 1366 (Fed. Cir. 2001); Barnett, 83 F.3d at 1380.

The pertinent evidence added to the record since the last final denial includes the Veteran's lay testimony that his bilateral hearing loss and tinnitus have been present since service. Specifically, during his October 2011 VA examination, the Veteran stated that he was told he had hearing loss at separation and he also reported that he had tinnitus at separation. 

In this case, the evidence added to the record since the last final denial supports the nexus element of his claims of entitlement to service connection for bilateral hearing loss and tinnitus. As noted above, the claim was previously denied because it was not shown that the Veteran's bilateral hearing loss or tinnitus occurred in or was caused or aggravated by service. Additionally, with regard to the claim of service connection for bilateral hearing loss, the claim was denied because it was not shown to have begun within one year from discharge. Therefore, the Veteran's lay statements regarding the onset of his bilateral hearing loss and tinnitus are new, as he had not previously alleged that he has experienced bilateral hearing loss and tinnitus since service. In addition, the evidence is material, as it raises a reasonable possibility of substantiating the claim. The Veteran is competent to describe the onset of his symptoms of bilateral hearing loss and tinnitus. Finally, because evidence is presumed to be credible, this evidence is deemed to be the requisite new and material evidence needed to reopen the claim of service connection for bilateral hearing loss and tinnitus. See Kutscherousky, 12 Vet. App. at 371. Accordingly, the Board finds that new and material evidence has been submitted, and the Veteran's claims for service connection for bilateral hearing and tinnitus loss will be reopened. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156.
 
II. Service connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). 

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran is seeking service connection for eardrum damage that he contends he sustained during his period of active service. 

The Veteran has reported that he was exposed to loud noise and acoustic trauma as an infantryman during his active period of service. The Board finds that the noise exposure described by the Veteran is consistent with the duties and circumstances of his military occupational specialty. Therefore, the Board finds that in-service military noise exposure is established. 38 U.S.C.A. § 1154 (West 2014).

The Veteran's service treatment records indicate that upon entrance to service in June 1967, the Veteran's ears were evaluated as normal. The Veteran denied any ear, nose or throat trouble, running ears, or hearing loss at entrance and separation. At separation in June 1969, the Veteran's PULHES profile reflected a finding of "1" for a "high level of fitness" for all areas, including his hearing and his ears. The examiner noted, however, that he had right ear early otitis media. 

The claims file contains VA treatment records dating from December 2006. In November 2007, the Veteran was seen for complaints involving his ears; he complained of middle ear-related symptoms in the left ear, and his hearing loss and tinnitus were noted to be worse. An otoscopy revealed bilaterally retracted and scarred tympanic membranes and the examiner noted that the Veteran appeared to have Eustachian tube problems in at least the left ear. The Veteran had a myringotomy tube placed in January 2008. After the placement, the Veteran reported symptoms of dizziness, nausea, and vomiting in March 2008. These complaints were repeated in April 2008 and November 2008. A treatment note from November 2008 indicated that the Veteran's tube was adherent to the lateral canal wall in an accumulation of cerumen. It was tender to the touch and the clinician noted that the left tympanic membrane was retracted, but there was no perforation or sign of effusion. There was an attic retraction pocket of which the depth was easily visualized. A December 2008 treatment record indicated that the tube was removed.

During the September 2011 VA examination regarding the Veteran's claim of entitlement to service connection for bilateral hearing loss and tinnitus, the examiner noted the Veteran's claim of service connection for damaged eardrums, to include as related to right otitis media. The examiner explained that otitis media is a medical condition, and it is not caused by noise exposure.

The Veteran was provided a VA examination in conjunction with this claim in October 2011. At that time, the Veteran reported hearing loss and tinnitus, and he indicated that he had a right ear infection at separation. The examiner noted the Veteran's history of dizziness but found that there was no history of trauma to the ear, neoplasm, ear pain, ear discharge, ear pruritus, balance problems, gait problems, or ear infections. The physical examination revealed no deformity of the auricle; the external canal was found to be normal; there was no finding of aural polyps; the mastoids were normal; no complications of ear disease were found; and there was no evidence of a middle or inner ear infection. The examiner noted that the Veteran's right tympanic membrane had "mild attic retraction" and his left tympanic membrane exhibited a "retracted eardrum onto incudostapedial joint." The examiner also noted that the Veteran had signs of a staggering gait or imbalance. 

In rendering his opinion, the examiner found that it is less likely than not that the Veteran had damaged eardrums as a result of military noise exposure. The examiner stated that the Veteran showed "no evidence of damaged eardrums." In providing his rationale, the examiner explained that the Veteran has negative pressure on tympanograms and retracted eardrum on the left, but found that this is not likely to be related to service exposure. Instead, the examiner explained that while the Veteran's eardrums are not normal, they are not "damaged." He indicated that the retraction is likely the result of longstanding eustachian tube dysfunction and not service-related exposure. 

The Veteran testified at his September 2015 hearing that he had trouble with his balance after service; he indicated that he had a tube put in one of his ears to correct the problem. He testified that the problem worsened for the year that he had the tube in his ears. He complained of dizziness and vomiting. He stated that after they removed the tube, he "never got dizzy again." The Veteran indicated that the tube was placed in his ear because of the damage to his eardrum. He also stated that his discharge paperwork indicates that his eardrums were ruptured; he testified that he was young and if he had known, he would have had the problem addressed at that time.

The Board finds the VA examiners' opinions to be highly probative to the questions at hand. The examiners were clinicians who possess the necessary education, training, and expertise to provide the requested opinions. See Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). In addition, the VA examiners collectively provided adequate rationales in determining that the Veteran does not have eardrum damage related to his period of active service. Their opinions were based, at least in part, on examination and interview of the Veteran. Additionally, the VA examination reports and opinions expressly demonstrate the examiners' review of the Veteran's medical history, both during service and after separation. The examiners' opinions, taken together, considered all of the relevant evidence, to include the Veteran's contentions that he has eardrum damage related to service. Clearly, the examiners took into consideration all relevant medical facts, both favorable and unfavorable, in giving their opinions. For these reasons, the Board finds the opinions persuasive and dispositive of the medical question presented in this case. 

The Board notes that the only contrary opinion of record comes from the Veteran himself, who maintains that he has eardrum damage related to his period of active service. While the Board recognizes that there are instances in which lay testimony can provide probative evidence in medical matters, such as describing symptoms observable to the naked eye, or even diagnosing simple conditions such as a broken bone, it is now well established that lay persons without medical training, such as the Veteran, are not competent to opine on matters requiring medical expertise, such as the diagnosis of eardrum damage. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). In this regard, medical testing and expertise is required to determine the diagnosis of symptoms arising from an eardrum injury or disorder as the condition involves an internal process not immediately observable. Thus, the Veteran has not been shown to have medical expertise to render a competent medical opinion as to the diagnosis of eardrum damage.

Moreover, to the extent that the Veteran believes that he has eardrum damage due to his service, as a lay person, he is not shown to possess any specialized training in the medical field. The Veteran's opinion as to the etiology of his eardrum damage is not competent medical evidence, as such questions require medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999). The persuasive value of his lay contentions is low because the overall factual picture is complex. The Board recognizes that the Veteran was noted as having early right ear otitis media at separation. Additionally, the Board recognizes that the Veteran has continued to receive medical treatment for his ears. He had a tympanostomy tube placed in his left ear, and he was also treated for retraction of the right tympanic membrane, left middle ear effusion, and dizziness and vomiting. However, the October 2011 VA medical examiner explained that the Veteran's retraction is likely the result of longstanding eustachian tube dysfunction and not service-related exposure. As the evidence does not show the Veteran has expertise in medical matters, the Board concludes that the Veteran's nexus opinion in this regard is not competent and therefore is not probative of whether he has eardrum damage related to his period of service. Indeed, the Veteran testified that he was diagnosed with bilateral ear perforations at his discharge as shown on his separation exam. This statement, however, is inaccurate. The separation examination report contains a list of systems of the body to include Part 23. "Drums (Perforation)." The abnormal box is checked with an explanation of the condition observed, "[e]arly [right] otitis media." A contemporaneous statement as to a declarant's then-existing physical condition, such as his separation examination, (as opposed to his current statements of memory or belief to prove the fact remembered or believed) is recognized as possessing circumstantial guarantees of trustworthiness. See Fed. R. Evid. 803 (3). Therefore, the separation examination is accepted as the credible and accurate account of his ears. Thus, the Veteran was not diagnosed with bilateral ear perforations upon separation from his military service. 

Based on the foregoing, the Board concludes that the preponderance of the evidence is against a finding that the Veteran has eardrum damage related to his period of active service. While the Veteran asserts that he has eardrum damage related to service, the VA examiners who have examined the Veteran and reviewed his claims file have considered and addressed this contention, and have concluded that the Veteran does not have eardrum damage that is a result of or at all related to his service. In sum, the competent and probative evidence does not establish that the Veteran has eardrum damage that is related to his military service. Accordingly, service connection is not warranted for eardrum damage on any basis. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2002); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

New and material evidence to reopen a claim of entitlement to service connection for bilateral hearing loss has been received; the appeal is granted to this extent. 

New and material evidence to reopen a claim of entitlement to service connection for tinnitus has been received; the appeal is granted to this extent. 

Entitlement to service connection for eardrum damage is denied.


REMAND

Although the Board sincerely regrets the additional delay, after a review of the record, further development is required prior to adjudicating the Veteran's claims for service connection for bilateral hearing loss and tinnitus. It is necessary to ensure that there is a complete record upon which to decide the Veteran's claim so that he is afforded every possible consideration. VA has a duty to make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A(a) (West 2014); 38 C.F.R. § 3.159(c), (d) (2014).

The Veteran seeks service connection for hearing loss and tinnitus on a direct basis; he contends his hearing loss and tinnitus resulted from his noise exposure during service. As noted above, noise exposure is conceded. 

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

The Veteran's entrance audiogram, dated June 1967, is available in his service treatment records. Importantly, prior to November 1967, service department audiometric results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards have been converted to ISO-ANSI standards in the chart below. The ASA figures are the first figures to appear in the chart with the ISO-ANSI standards represented by the figures in parenthesis. During the Veteran's in-service examinations, the measure of pure tone threshold levels, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
15(30)
-5(5)
-5(5)
-5(5)
5(10)
LEFT
15(30)
10(20)
5(15)
15(25)
25(30)

Then, upon discharge in June 1969, the Veteran's discharge examination report shows pure tone threshold levels, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
10
10
---
15
LEFT
10
20
10
---
20

In Hensley v. Brown, 5 Vet. App. 155, 159-60 (1993) the Court held that even if audiometric testing at separation did not establish hearing loss by VA standards at 38 C.F.R. § 3.385, such audiometric test results did not preclude granting service connection for a current hearing loss when there is evidence that current hearing loss is causally related to service. In Hensley, there was an upward shift in threshold levels at some frequencies on an examination for separation and in-service audiometric testing yielded elevated thresholds at some frequencies. Thus, the Court found that the claim could not be denied solely because the hearing loss did not meet the criteria for 38 C.F.R. § 3.385 at separation. Rather, if there were any current hearing loss (by VA standards) it had to be determined whether shifts in auditory thresholds during service represented the onset of any current hearing loss (even if first diagnosed a number of years after service). Thus, a claimant who seeks to establish service connection for a current hearing disability must show, as is required in a claim for service connection for any disability, that a current hearing disability is the result of an injury or disease incurred in service, the determination of which depends on a review of all the evidence of record including that pertinent to service. See 38 U.S.C.A. §§ 1110; C.F.R. §§ 3.303 and 3.304; Hensley, 5 Vet. App. at 159-60.

The Veteran underwent a VA examination in April 2008. At that time, the examiner noted that the Veteran's hearing was normal at all frequencies except for 6000 Hz in the left ear at entrance, and he noted that the Veteran's hearing was within the normal range at all frequencies tested at separation. The examiner noted that the Veteran had previously been diagnosed with mixed hearing loss in the right ear with possible otitis media and sensorineural hearing loss in the left ear. The examiner also noted that VA treatment records showed the Veteran had a pressure equalization tube placed into his left ear in January 2008 after he complained of middle ear symptoms. The examiner opined that it was less than likely that the hearing loss had its onset while the Veteran was in service, given the Veteran's normal hearing at entrance to and separation from service. The examiner found that the audiometric test results for the right ear showed a moderate flat sensorineural hearing loss and audiometric test results for the left ear showed a mild to moderate sloping to severe sensorineural hearing loss with "an island of normal hearing at 2000 Hz." 

Regarding his claim for tinnitus, the examiner noted that the Veteran complained of a "new onset" of humming tinnitus in October 2003. Later in the examination, the Veteran stated that he began noticing his bilateral periodic tinnitus around 1972 or 1973, about three or four years after discharge from service. He stated that he experienced tinnitus symptoms about two or three times per week, and that the sound is a "high pitched sound." The examiner opined that it is less likely that the Veteran's tinnitus is related to his military noise exposure due to the reported onset began three or four years after his release from active duty. The examiner also noted that "at one time" the Veteran reported that "humming tinnitus" started in 2003. 

The Veteran was provided another VA examination in September 2011. At that time, the examiner reviewed the claims file to include the service treatment records and found that the Veteran's haring was normal on separation. The examiner noted that the Veteran had early right otitis media on separation. The examiner diagnosed the Veteran with bilateral sensorineural hearing loss and noted that the hearing loss would affect the Veteran's occupational activities insofar as he would have hearing difficulty. The examiner opined that the Veteran's hearing loss is less likely as not caused by or a result of military noise exposure. In her rationale, the examiner indicated that the Veteran's service medical records in the claims file demonstrate normal hearing sensitivity at military induction and separation. 

With regard to his claim of service connection for tinnitus, he Veteran reported that he had noticed episodes of tinnitus for about the past three to five years, but he was unsure of the date of onset. The examiner noted the October 2003 treatment record, in which the Veteran reported that his tinnitus had started three to four months previously. The Veteran also indicated that the onset of tinnitus was concurrent with the worsening of his right ear hearing. At the time of examination, he stated that he had daily episodes of tinnitus lasting a few seconds each and occurring three or four times per day. The examiner opined that the Veteran's tinnitus is less likely as not caused by or a result of military noise exposure. The examiner explained that the Veteran indicated the tinnitus began in 2003 and was separated from the military in 1969; she indicated that there is no other evidence in the claims file to show that the Veteran reported tinnitus during his active duty service in the military. 

In October 2011, during his examination for his claim of entitlement to service connection for eardrum damage, the Veteran reported that his tinnitus had been present since separation. 

Finally, during his September 2014 hearing, the Veteran indicated that the tinnitus began "within several years after" discharge. The Veteran also stated that the tinnitus had gotten progressively worse since that time. He testified that the tinnitus interferes with his livelihood and affects his ability to hear conversation. He also stated that he cannot hear out of his right ear on the telephone and he has to use his left ear.

The Board finds that an addendum opinion should be obtained, to include an opinion that addresses any threshold shifts shown in the Veteran's STRs. 

Additionally, the Board notes that the VA examination reports indicate that the Veteran was seen for treatment regarding his hearing loss and tinnitus as early as October 2003. However the earliest VA treatment records available in the claims file are dated November 2006. On remand, these as well as any other outstanding and relevant VA treatment records should be obtained and associated with the file on remand. 38 C.F.R. § 3.159(c)(2); Bell v. Derwinksi, 2 Vet. App. 611 (1992). 

Accordingly, the case is REMANDED for the following action:

1. The AMC should also obtain any outstanding VA treatment records, to include any records from appointments dated since October 2003. All efforts to obtain these records must be documented in the claims file.

2. The AMC should obtain an addendum opinion regarding the nature and etiology of the Veteran's bilateral hearing loss and tinnitus. The claims file [including any relevant records contained in Virtual VA/Veterans Benefits Management System (VBMS)] must be provided to and reviewed by the examiner, and a notation to the effect that this record review took place should be included in the report. The examiner is requested to provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's bilateral hearing loss or tinnitus is related to service, including in-service military noise exposure.

The examiner should be advised to convert the June 1967 audiometric findings from American Standards Association (ASA) units to International Standards Organization (ISO)-American National Standards Institute (ANSI) units. 

In opining on the Veteran's bilateral hearing loss and tinnitus, the examiner is asked to do the following: 

(1) assume as true that the Veteran was in fact exposed to military noise during service; 

(2) explain the significance of the absence or presence of threshold shifts and severity of such threshold shifts in regard to the likelihood military noise exposure caused permanent damage; 

(3) explain the significance of normal hearing in regard to the likelihood military noise exposure caused permanent damage, including theories of delayed/latent onset of hearing loss; and 

(4) explain the likelihood tinnitus is due to in-service noise exposure on a delayed or latent onset theory of causation.

All opinions should be supported by a clear rationale, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If it is not possible to provide the requested opinion without resort to speculation, the examiner should state why speculation would be required in this case (e.g., if the requested determination is beyond the scope of current medical knowledge, actual causation cannot be selected from multiple potential causes, etc.). If there are insufficient facts or data within the claims file, the examiner should identify the relevant testing, specialist's opinion, or other information needed to provide the requested opinion.

3. Thereafter, readjudicate the claims of service connection for bilateral hearing loss and tinnitus. If any of the benefits sought on appeal remain denied, the Veteran and his representative should be issued a supplemental statement of the case, and given an opportunity to respond before the case is returned to the Board.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs